IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

The Burlington Insurance
Company,

    **Plaintiff,**

v.                                    Case No. 2:08-cv-1054

                                          JUDGE EDMUND A. SARGUS, JR.
PMI America, Inc., et al.,             Magistrate Judge Kemp

    **Defendants.**

## OPINION AND ORDER

I.

Plaintiff, The Burlington Insurance Company (which refers to itself as TBIC), filed this declaratory judgment action after one of its insureds, defendant PMI America, Inc., was sued in the Court of Common Pleas of Allegheny County, Pennsylvania, over work which it had done on a kiln owned and operated by a company known as Carmeuse Lime. As alleged in the second amended complaint (Doc. #65), Carmeuse claimed in its suit against PMI that PMI's work on the kiln was defective, causing the kiln shell to crack and costing Carmeuse more than $2,000,000.00. TBIC has been defending PMI in that case under a reservation of rights, and has asked this Court to declare that it had neither a duty to defend nor a duty to indemnify PMI under the insurance policy in question.

After this case was filed, the Pennsylvania case was decided in favor of Carmeuse, and it now has a judgment against PMI for slightly in excess of $1,000,000.00. Carmeuse was named as a defendant in this action based on TBIC's view that it "has a potential interest in the outcome of the within litigation." Second Amended Complaint, at ¶5. So, too, was a company called

Process Group, Inc., or PGI, which is described in the complaint as the parent company of PMI and as "a party whose interests and rights may be substantially affected by this lawsuit ...." Second Amended Complaint, ¶4.

In response to the Second Amended Complaint, Carmeuse filed an answer, a counterclaim, and crossclaims. Its counterclaim seeks a declaration that TBIC is responsible, based on the insurance policy, to pay the judgment. One of its crossclaims seeks a similar declaration concerning coverage under an insurance policy issued by Liberty Mutual Insurance Company, another named defendant. Its other crossclaim is directed to PGI, and contains numerous factual assertions in support of the assertion that PGI and PMI did not maintain separate corporate identities and that, under a theory of "piercing the corporate veil," PGI is also obligated on the judgment entered against PMI.

PGI promptly moved to dismiss the crossclaim, contending that it falls outside the scope of permissible crossclaims as defined in Fed.R.Civ.P 13(g). Carmeuse has opposed that motion. Additionally, due to its pending motion to dismiss, PGI has resisted providing any discovery about those matters which Carmeuse deems relevant to its "piercing the corporate veil" claim, leading to the filing of competing motions to compel discovery and for an order staying discovery on the crossclaim. For the following reasons, the Court will grant the motion to dismiss the crossclaim, and will deny as moot the parties' discovery motions.

II.

The standard for determining whether a crossclaim properly belongs in a civil action is easy to state, but somewhat more difficult to apply. Fed.R.Civ.P. 13(g) reads in full:

> (g) **Crossclaim Against a Coparty.** A pleading may state as a crossclaim any claim by one party against a coparty if the claim arises out of the transaction or

> occurrence that is the subject matter of the original action or of a counterclaim, or if the claim relates to any property that is the subject matter of the original action. The crossclaim may include a claim that the coparty is or may be liable to the cross-claimant for all or part of a claim asserted in the action against the cross-claimant.

Here, the crossclaim in question does not relate to any property which is the subject matter of TBIC's claim for declaratory relief, nor is it a claim that PGI is or may be liable to Carmeuse for any part of a claim asserted against Carmeuse by another party to the case. In fact, as PGI notes, no other party to the case has asserted any claims against Carmeuse at all. Therefore, this particular crossclaim is proper only if it "arises out of the transaction or occurrence that is the subject matter of the original action." The Court's task here is to determine exactly what is the "subject matter" of TBIC's complaint; only then will it be possible to know if the crossclaim arises out of that same subject matter, or, as PGI argues, out of a different subject matter.

Determining whether the phrase "subject matter of the original action" as that phrase is used in Rule 13(g) is broad enough to include both TBIC's declaratory judgment claim and Carmeuse's piercing the corporate veil claim is no simple task. Carmeuse and PGI have each offered a plausible argument on this issue. Carmeuse claims that the subject matter of TBIC's claim for declaratory judgment is defined by this question: Who will ultimately have to pay Carmeuse the money which the Allegheny County jury awarded it if PMI is unable to do so? If that is the relevant question, Carmeuse's claim against PGI is part of the same inquiry. PGI, on the other hand, views the subject matter of the original action as involving this question: Does the insurance policy issued by TBIC cover the acts or occurrences by which Carmeuse was damaged? If this interpretation is correct, the question raised by the crossclaim - i.e, can PGI be held legally responsible for PMI's debts on a corporate veil-piercing theory - has little or nothing

-3-

to do with the scope of coverage under the TBIC policy.

Choosing between these arguments requires a careful consideration of what other courts have said the language used in Rule 13(g) actually means. It is helpful that language identical to that used in Rule 13(g) also appears in Rule 13(a), which defines the scope of compulsory counterclaims, so the same standards which apply to that rule also apply to Rule 13(g). Those standards are not that much more clearly defined, however. As the Court of Appeals observed in *United States for Use and Benefit of Pickard v. Southern Constr. Co.*, 293 F.2d 493, 500 (6th Cir. 1961), *rev'd in part on other grounds* 371 U.S. 57 (1962),

> "'Transaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *Moore v. New York Cotton Exchange*, 270 U.S. 593, 609-610, 46 S.Ct. 367, 371, 70 L.Ed. 750. The test generally applied in determining whether a counterclaim is compulsory is whether there is a logical relationship between the claim and counterclaim. Only claims that are unrelated, or are related but within the exceptions stated in the rule, need not be pleaded.

According to the Court of Appeals, rather than focus on the exact language used in these rules, courts "have devised other tests which further focus the question." Those tests involve answering these four questions:

1) Is there a logical relationship between the two claims?

2) Are the issues of fact and law raised by the claim and counterclaim largely the same?

3) Would res judicata bar a subsequent suit on the counterclaim if the court were not to take jurisdiction?

4) Would substantially the same evidence support or refute both the claim and the counterclaim?

*Maddox v. Kentucky Finance Co., Inc.*, 736 F.2d 380, 382 (6th Cir. 1984).

This Court has, of course, followed the Court of Appeals' lead, taking into account the policy behind the rule, which is to further judicial economy and efficiency by trying related actions together. In particular, this Court pays close attention to the extent to which the legal, factual and evidentiary questions raised by the original claim and the crossclaim overlap. *See Mead Data Cent., Inc. v. West Pub. Co.*, 679 F.Supp. 1455, 1458 (S.D. Ohio 1987). As another district court within the Sixth Circuit has held, in a case where "the legal theories [of the two claims] are distinctly different, and there appears to be minimal factual overlap," the logical relationship required in order for two claims to be related enough for either Rule 13(a) or 13(g) to apply is simply lacking. *See FieldTurf, Inc. v. TurfUSA, LLC*, 2004 WL 67916, *2 (W.D. Ky. January 13, 2004).

Both parties cite Judge Marbley's decision in *Progressive Cas. Ins. Co. v. Belmont Bancorp*, 199 F.R.D. 219 (S.D. Ohio 2001) in support of their respective positions on this issue. That case, like the *Mead Data* and *FieldTurf* decisions, also focuses on the relationship between the factual and legal issues in the main action and in the crossclaim. There, Judge Marbley concluded that a claim by an insurer seeking declaratory relief about its duty, if any, to indemnify certain parties under a bond issued by that insurer, and a crossclaim by one of the defendants seeking indemnification from another defendant for liability arising out of the same actions or occurrences that triggered coverage under the bond, were sufficiently related to make the crossclaim proper. Judge Marbley reasoned that although the legal issues between the two claims were not identical, they were interrelated, and that the underlying facts were identical, thus making the claims logically related for purposes of Rule 13(g).

Applying the same test to the different facts of this case, the Court reaches a different

-5-

result. Turning first to the potential identity or overlap of factual issues, the Court concludes that they bear little relation to each other. The facts needed to decide TBIC's coverage claim will consist primarily of what language appears in the insurance policy and, to the extent it may be ambiguous, any parol evidence about the drafting and interpretation of the policy. The facts may also include evidence about the underlying case and the conduct of PMI that led the Allegheny County court to conclude that PMI was responsible for the cracking or defects in the kiln itself, to the extent that there is any dispute about why PMI was found liable in that case. Evidence about the relationship between PMI and PGI would be completely irrelevant to the Court's determination of the factual issues presented by TBIC's claim, and none of the facts important to the coverage claim have any bearing on whether PGI can be held liable for its subsidiary's debts.

The legal issues are also distinct. All of the issues raised by TBIC's complaint sound in contract, but the claim asserted by Carmeuse against PGI does not. While it may or may not be a tort claim, as PGI suggests, the legal principles applicable to the construction of language in an insurance contract and those involved in deciding whether a corporate shareholder or parent may be held legally responsible for the financial obligations of a related corporation have nothing in common. The former inquiry involves a combination of traditional principles of contract construction and rules of construction unique to insurance contracts. The latter inquiry draws legal inferences from facts such as whether the two corporations at issue maintained separate records and separate corporate identities, how much control the parent corporation exerted over the conduct of the subsidiary, and whether that control was fraudulent or injurious to the party seeking to pierce the veil. *See, e.g., Orrand v. Kin Contractors, LLC*, 2011 WL 1238301 (S.D. Ohio March 30, 2011)(Sargus, J.).

In arguing for the opposite result, Carmeuse does not identify any similarity in the factual and legal issues presented by the complaint and the crossclaim other than that the state court judgment which prompted TBIC to file its declaratory judgment action and the state court judgment which Carmeuse seeks to enforce against PGI are the same judgment. This is enough, according to Carmeuse, for the Court to find that the factual and legal issues between the two claims "are sufficiently 'interrelated' to satisfy a liberal construction of Rule 13(g)." Defendant Carmeuse Lime, Inc.'s Memorandum in Opposition to Defendant Process Group, Inc.'s Motion to Dismiss Cross-Claim, Doc. #79, at 4. The Court disagrees.

It is simply not the case that Rule 13(g)'s test is satisfied every time an original complaint and a crossclaim are prompted by the same factual occurrence. For example, in *Quinn v. Pipe & Piling Supplies (U.S.A.) Ltd.*, 2011 WL 672240 (W.D. Mich. February 18, 2011), the two claims which were purportedly related to each other for purposes of Rule 13(a) (which, as the Court noted above, contains language identical to that in Rule 13(g)) were (1) a sexual harassment claim brought by a female employee against her corporate employer and its general manager, and (2) a counterclaim for violations of the Michigan electronic eavesdropping statute relating to the employee's having videotaped the general manager without his knowledge while he was engaging in allegedly harassing conduct. Undoubtedly, both claims were prompted by the same factual occurrence or occurrences, i.e. sexually harassing conduct in the plaintiff's workplace, and in that sense they bore some relationship to each other - just as the issues of the scope of TBIC's coverage for the actions leading to the state court judgment and PGI's potential liability for that judgment bear some relationship to each other. But that is not enough. The Quinn court, also focusing on the key question of the overlap of factual and legal issues between the two

-7-

claims, held that although the eavesdropping claim "clearly bears a situational relationship to the alleged sexual discrimination which is the subject of this suit," the test set forth in Rule 13(a) had not been met. Rather, the court found the absence of an overlap in factual and legal issues determinative, reasoning that

> The factual and legal questions which must dominate the proposed counterclaim, such as the private nature of the workplace, have no relevance to the present discrimination claim. Likewise, the alleged inappropriate behavior of Defendant Ron Griffith has no bearing on a violation of Michigan's eavesdropping laws. Indeed, Defendants have not convincingly raised any issues common to the claims. There is no compelling reason to believe that substantial duplication of effort would be required in trying the claims separately.

Id. at *1.

The same is true here. In addition to the lack of common factual and legal issues, there is no reason to think that it will be inefficient to try or resolve these two matters separately. A summary judgment motion has already been filed on the coverage issue. The briefs filed by TBIC and PMI appear to suggest that the decision can be made on the basis of undisputed facts about the Pennsylvania litigation and the language of the policy. Factual development on the crossclaim would proceed entirely independently of the summary judgment motions about coverage (or, if there were some ambiguity on that issue requiring further development of the record, independently of that development) and nothing about the legal issue raised by the crossclaim would be affected by the Court's construction of the policy. Of course, the possibility exists that the crossclaim might become moot if there were sufficient insurance coverage to satisfy the judgment, but that does not mean that any efficiencies would be gained by having both issues resolved by the same judge or in the same proceeding; the impact of a final judgment on coverage on the desirability or necessity of Carmeuse's asserting a crossclaim against PGI will be

the same whether that claim remains pending here or is pending elsewhere. In short, not only is the necessary relationship between the two claims lacking, but the purposes behind Rule 13(g) would not be furthered by permitting the crossclaim to be asserted in this action. On balance, then, the Court concludes that the prerequisite for a proper crossclaim as articulated by Rule 13(g) has not been satisfied, and that the crossclaim should therefore be dismissed without prejudice.

III.

For the reasons discussed above, the Court **GRANTS** Defendant Process Group, Inc.'s motion to dismiss the crossclaim of Defendant Carmeuse Lime, Inc. (Document 77). That claim is **DISMISSED WITHOUT PREJUDICE**. The pending motions to compel production of documents and to stay discovery (Documents 88 and 92) are **DENIED AS MOOT**.

**IT IS SO ORDERED.**

9-1-2011
**DATE**

EDMUND A. SARGUS, JR.
UNITED STATES DISTRICT JUDGE